**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Nicholas Leigh Peralta,

Defendant.

No. CR-25-03844-001-TUC-RM (MSA)

**ORDER**

Pending before the Court is Defendant Nicholas Leigh Peralta's Motion to Suppress Firearm and Drug Evidence. (Doc. 30.) The Government responded in opposition to the Motion (Doc. 31), and the Court held an evidentiary hearing on the matter on August 27, 2026 (Doc. 37). For the following reasons, the Court will deny the Motion.

## I. Background[1]

On the night of July 28, 2025, Officer Chase Bryan of the Tucson Police Department was patrolling in his marked police vehicle when he observed Defendant riding a bicycle. (Doc. 44 at 9–12.) Officer Bryan positioned his vehicle behind the bicycle so that he had a clear view of its rear and then followed for a short distance. (*Id.* at 11–13.) Although his headlights were activated, Officer Bryan observed no red reflection from the rear of the bicycle. (*Id.* at 13.) He also did not observe a visible red light. (*Id.*) Believing that state law requires a bicycle used at nighttime to have either a red reflector or an activated red lamp on its rear, and having observed neither, Officer Bryan activated his vehicle's

[1] This factual statement is based on the briefing and the transcript of the evidentiary hearing. (Docs. 30, 31, 44.)

emergency equipment to conduct a traffic stop. (*Id.* at 11–12).[2]

Defendant did not stop. (*Id.* at 14.) Instead, he continued riding for a short distance before abandoning the bicycle and fleeing on foot. (*Id.*) Officer Bryan exited his vehicle, commanded Defendant to stop, and then gave chase when Defendant did not comply. (*Id.*) The pursuit ended when Officer Bryan tackled Defendant to the ground, causing Defendant to lose consciousness. (*Id.* at 14–15.)

When he regained consciousness, Defendant informed officers that he had a firearm on his person. (*Id.* at 15–16.) The officers secured the firearm and then conducted a check on Defendant's criminal history to determine whether he was prohibited from possessing firearms. (*Id.*) The check confirmed that Defendant was a prohibited possessor. (*Id.* at 16.) The officers also searched a bag that Defendant was carrying and found a scale; bags containing what appeared to be fentanyl, cocaine, and methamphetamine; and a large amount of cash. (Doc. 30 at 4; Doc. 31 at 2.) Finally, an inspection of the bicycle revealed a red lamp on the rear that was either inoperable or not turned on. (Doc. 44 at 17; Def.'s Exs. 10, 11, 12.) There was no red reflector. (Doc. 44 at 18.)

Defendant was charged by indictment with possession of a firearm and ammunition by a prohibited person, possession with intent to distribute fentanyl, and carrying of a firearm during a drug-trafficking crime. (Doc. 12.) He now moves to suppress all firearm and drug evidence, arguing that the stop violated the Fourth Amendment. (Doc. 30.)

## II. Legal Standard

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (first citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968); and then citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). A law enforcement officer may conduct an investigatory traffic stop when he has "reasonable suspicion." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)). The reasonable-suspicion

[2] Officer Bryan was mistaken about the law: state law requires a red reflector; a red lamp "in addition to the red reflector" is optional. A.R.S. § 28-817(A).

analysis considers the "totality of the circumstances" and examines whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette*, 572 U.S. at 396–97 (quoting *Cortez*, 449 U.S. at 417–18). This standard is not demanding; it requires more than a "hunch" but "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Id.* at 397 (first quoting *Terry*, 392 U.S. at 27; and then quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

**III. Discussion**

Defendant argues that Officer Bryan lacked reasonable suspicion to stop him for violating the red-reflector law. (Doc. 30 at 6; Doc. 44 at 30.) He points to photographs of the bicycle showing a red object on its rear. (Def.'s Exs. 10, 11, 12.) He contends that the red object could have been either "a red reflector or a red light that could have also served as a reflector," and he criticizes Officer Bryan for not "checking" or "test[ing]" the object. (Doc. 30 at 6–7; Doc. 44 at 31.) He further criticizes Officer Bryan's report for omitting facts that, in his view, would have been relevant to determining whether there was reasonable suspicion to believe the bicycle lacked the required reflector. (Doc. 30 at 7–8; Doc. 44 at 31.) Finally, he says that if Officer Bryan's "theory was that the mere inability to see a red light and/or reflector from [his] vantage point automatically established justification for a traffic stop, he should have continued observing before deciding on whether or not to initiate a warrantless seizure." (Doc. 30 at 8.) In response, the Government argues that Officer Bryan's testimony that he observed no red reflector or red light establishes reasonable suspicion for the stop. (Doc. 31 at 4; Doc. 44 at 29–30.)

The Court agrees with the Government that Officer Bryan had reasonable suspicion. Arizona law provides that a bicycle "used at nighttime" must have "a red reflector on the rear . . . that is visible from all distances from fifty feet to three hundred feet to the rear when the reflector is directly in front of lawful upper beams of head lamps on a motor vehicle." A.R.S. § 28-817(A). Here, the parties agree that the stop occurred at "nighttime." (Doc. 30 at 7.) Further, Officer Bryan testified credibly that he followed behind the bicycle

and, despite having his headlights activated and a clear view of the rear of the bicycle, he observed no red reflection. (Doc. 44 at 13.) These observations provided Officer Bryan with a particularized and objective basis to believe that Defendant was operating the bicycle in violation of Arizona's red-reflection law.

Defendant's arguments to the contrary are not persuasive. He argues that Officer Bryan is not credible because, despite agreeing that he was trained to include "all relevant facts and observations" in his reports, his report in this case omits numerous important facts. (Doc. 30 at 7–8; Doc. 44 at 19, 31.) Such facts include the length of time he followed Defendant before initiating the stop; the distance from which he observed Defendant; his speed when observing Defendant; that he had his headlights on and a clear view of Defendant; and that he initiated the stop because of an alleged violation of the red-reflector law. (Doc. 30 at 7–8; Doc. 44 at 21–23, 25–26, 31.) Defendant points out that Officer Bryan's testimony was given more than a year after the stop and suggests that the factual omissions and passage of time raise doubts about such testimony. (Doc. 44 at 31.)

The Court does not agree. Officer Bryan provided context for what he considered to be "all relevant facts and observations" when he explained that his report was merely "a summary of what occurred." (*Id.* at 19, 21–22.) His report, in fact, contains the central observation underlying the stop: he wrote that he "saw a male on a bike with no red light or red reflector." (Doc. 30-1 at 2.) Officer Bryan's testimony regarding the additional details is consistent with his report, and the Court finds such testimony credible.

Next, Defendant interprets the report's statement that there was "a male on a bike with no red light or red reflector" as an assertion that the bicycle physically lacked a red lamp or red reflector. (Doc. 30 at 7; Doc. 44 at 20–21, 31.) He contends that the statement is inconsistent with Officer Bryan's testimony that he observed no red light "activated." (Doc. 44 at 11, 31.) This argument is unpersuasive because it reads more precision into the report than is warranted. The report, which again is a summary, is most reasonably understood as a description of what Officer Bryan observed while following Defendant's bicycle at nighttime—no visible red light—not as a technical assertion that the bicycle

physically lacked a red lamp or red reflector. Indeed, when confronted with this issue on cross-examination, Officer Bryan credibly testified that he did not perceive any inconsistency between his report and testimony. (*Id.* at 20–21.)

Defendant further argues that Officer Bryan is not credible because he did not "test" the object "to make sure what it was." (Doc. 44 at 31; *see* Doc. 30 at 7.) However, Officer Bryan explained that a red reflector "doesn't need to be tested" because it will reflect red when light hits it, and that "when [his] lights were hitting the rear of the bike, there was no red reflection." (Doc. 44 at 24–25.) Finally, Defendant suggests that Officer Bryan should have continued observing the bicycle for some unspecified length of time before initiating the stop. (Doc. 30 at 8.) But Officer Bryan had reasonable suspicion once he saw a bicycle with no red reflection from the rear. An officer may act when he has reasonable suspicion; he need not delay a stop merely because additional observation might dispel that suspicion. *See Sokolow*, 490 U.S. at 11 ("The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques.").[3]

The Court finds that Officer Bryan had reasonable suspicion to stop Defendant for an alleged violation of A.R.S. § 28-817(A). Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Firearm and Drug Evidence (Doc. 30) is **denied**.

Dated this 18th day of September, 2026.

Honorable Rosemary Márquez
United States District Judge

[3] In his motion, Defendant references Ninth Circuit precedent holding that a mistake of law is necessarily unreasonable under the Fourth Amendment. (Doc. 30 at 5–6, 8.) That precedent was abrogated by *Heien v. North Carolina*, 574 U.S. 54, 60, 66 (2014), in which the Supreme Court held that reasonable suspicion may be based on an objectively reasonable mistake of law. Regardless, Officer Bryan's mistake of law in this case (that a red lamp could substitute for a red reflector) is constitutionally irrelevant because it did not cause him to stop Defendant for conduct that was ultimately lawful. *Cf. id.* at 67–68 (holding that an officer's mistaken belief that a vehicle violated a brake-light law was objectively reasonable and thus supported reasonable suspicion for a traffic stop).